**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | |
|---|---|
| MIXON SEED SERVICE, INC., *et al.*, : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | CASE NO.: 1:23-CV-181 (LAG) |
| : | |
| JASON HILL, *individually*, and : | |
| JOHN DOES 1–25, : | |
| : | |
| Defendants. : | |
| : | |

## ORDER

Before the Court is Plaintiffs' Motion for Default Judgment against Defendant Jason Hill. (Doc. 11). For the reasons below, Plaintiffs' Motion is **GRANTED**.

## BACKGROUND

On October 20, 2023, Plaintiffs, Mixon Seed Service, Inc. (Mixon), Plantation Seed Conditioners, Inc. (Plantation), AGSouth Genetics, LLC (AGSouth), Florida Foundation Seed Producers, Inc. (FFSP), and the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (LSUAMC), filed a Complaint against Defendants Jason Hill (Hill), individually, and John Does 1–25. (Doc. 1). This case involves allegations that Defendants violated Plaintiffs' rights under the Plant Variety Protection Act (PVPA), 7 U.S.C. § 2321 *et seq.* by their unauthorized sale of Plaintiffs' proprietary oat variety. (*Id.* at 1). Plaintiff Mixon is the parent company of Plaintiffs AGSouth and Plantation, the exclusive licensees of the PVPA rights to the oat variety at issue. (*Id.* ¶¶ 3–5). Plaintiff FFSP, a Florida non-profit corporation that aids and promotes research efforts at the University of Florida, and Plaintiff LSUAMC, a Louisiana higher education management board, own the PVPA rights to the oat variety at issue. (*Id.* ¶¶ 6–7). The Complaint includes twenty-five John Doe Defendants, who are "producers who

sold unauthorized PVP protected oat seed to Defendants or through Defendants or are producers who purchased unauthorized protected oat seed from Defendants." (*Id.* ¶ 9).

The PVPA provides "patent-like protection to novel varieties of sexually reproduced plants (that is, plants from seed)[.]" *Asgrow Seed v. Winterboer*, 513 U.S. 179, 181 (1995). The purpose of the PVPA is to provide developers of new plant varieties with "adequate encouragement for research, and for marketing when appropriate, to yield for the public the benefits of new varieties." 7 U.S.C. § 2581. The owner of a Plant Variety Protection Certificate has the right to control the usage of the protected variety identified by the Certificate for a period of twenty years. (Doc. 1 ¶ 16); 7 U.S.C. § 2483. The owner may license or grant and convey the use of the protected variety. (Doc. 1 ¶ 16); 7 U.S.C. § 2531.

Pursuant to 7 U.S.C. § 2482, the United States Plant Variety Protection Office issued Plant Variety Protection Certificate Number 201600313 (Certificate) for the common oat variety known as FL0720 on December 28, 2017. (Doc. 1 ¶ 18; Doc. 1-1). On June 30, 2015, Plaintiff FFSP exclusively licensed the commercial rights to FL0720 to Plaintiff Plantation, and Plaintiff Planation renamed the oat variety Horizon 720 for commercial purposes. (Doc. 1 ¶ 19; Doc. 1-2). The license grants Plaintiff Plantation the "exclusive license to 'produce, propagate, offer to sell or sell, or otherwise offer to dispose or dispose of the Registered Seed, Certified Seed, and Non-Certified Seed' of the Licensed Plant Materials[.]" (Doc. 1 ¶ 19). On July 19, 2023, Plaintiff FFSP exclusively licensed the commercial rights of Horizon 720 to Plaintiff AGSouth. (*Id.* ¶ 20). The license grants Plaintiff AGSouth "'all rights, titles, and interests in [Plaintiff Plantation]' and that all rights granted by [Plaintiff] FFSP to [Plaintiff] Plantation are assigned to [Plaintiff] AGSouth." (*Id.*).

Plaintiff Mixon and the seed dealers that Plaintiffs Mixon, Plantation, or AGSouth authorize to sell Horizon 720 "provide notice on the seeds' packaging that the Horizon 720 oat variety is protected by the [PVPA]." (*Id.* ¶ 23). Horizon 720 is sold as "a class of certified seed, meaning that before every sale, the seed must be certified by an approved government or private agency as to the variety, germination, and purity." (*Id.*). At all times

2

relevant to the Complaint, the Certificate was "in full force and effect." (*Id.* ¶ 24). Plaintiffs allege that Defendants "had actual notice and knowledge that the Horizon 720 oat variety was federally protected by the PVPA." (*Id.* ¶ 25).

On October 27, 2022, a market tester contacted Defendant Hill's employee "in response to a Facebook Marketplace post for the sale of oats" priced at a "substantially lower price[.]" (*Id.* ¶ 28). On October 28, 2022, the market tester then contacted Defendant Hill, "whereby [Defendant] Hill informed the market tester that he bought certified Horizon 720 oat seed from Plaintiff[] Mixon[.]" (*Id.* ¶ 29). That same day, the market tester went to Defendant Hill's business, where Defendant Hill acknowledged that the oats for sale "were a protected variety[] and were not certified." (*Id.* ¶ 30). Defendant Hill offered the market tester a substantially lower price for the oat seed, and the market tester agreed to buy it. (*Id.* ¶ 31). The oat seed that was loaded onto the market tester's trailer was "not in designer bags, and the PVPA protection legends were absent from the packaging." (*Id.* ¶ 32).

Plaintiffs allege that Defendants are engaged in a practice called "brown-bagging" in which a person or entity "sell[s] the harvest of protected variety without authority of the original variety owner[.]" (*Id.* ¶ 38). According to Plaintiffs, Defendants "are marketing, offering for sale, stocking, shipping, conditioning, exposing it for sale, and selling the 'brown-bagged' Horizon 720 oat seed without the required PVP notice" "at a lower price than authorized dealers, all without the authority of Plaintiffs." (*Id.* ¶¶ 39–40). On or about November 23, 2022, Plaintiffs sent Defendants a letter via first class mail instructing Defendants "to cease and desist promoting and illegally selling uncertified Horizon 720 oat seed." (*Id.* ¶ 33; Doc. 1-4). On or about December 1, 2022, Plaintiffs sent Defendants another letter via certified mail instructing Defendants "to preserve all physical or digital evidence relating to purchasing, growing, selling, storing, bagging, marketing, and cleaning of Horizon 720 . . . oat seed." (Doc. 1 ¶ 34; Doc. 1-5).

Plaintiffs filed this case in federal court pursuant to the Court's federal question jurisdiction on October 20, 2023. (Doc. 1). Therein, Plaintiffs bring claims for injunctive relief and damages under the PVPA. (*Id.* ¶¶ 37–68). On September 27, 2024, Plaintiffs submitted applications to the Clerk of Court for entry of default against Defendant Hill.

(Doc. 10; *see* Docket). On October 1, 2024, the Clerk of Court entered default as to Defendant Hill. (*See* Docket). On October 18, 2024, Plaintiffs filed a Motion for Default Judgment against Defendant Hill. (Doc. 11). Defendant Hill did not respond. (*See* Docket). The Motion for Default Judgment is ripe for review. *See* M.D. Ga. L.R. 7.2.

## **LEGAL STANDARD**

Prior to obtaining a default judgment, the party seeking judgment must first seek an entry of default. *See* Fed. R. Civ. P. 55(a). Pursuant to Rule 55(a), the Clerk must enter a party's default if that party's failure to plead or otherwise defend an action against it "is shown by affidavit or otherwise[.]" After a default has been entered, the Clerk may enter a default judgment on the plaintiff's request if the claim "is for a sum certain or a sum that can be made certain by computation," as long as the party is not a minor or incompetent and has not made an appearance. Fed. R. Civ. P. 55(b)(1). In all other cases, the plaintiff must apply to the Court for a default judgment. Fed. R. Civ. P. 55(b)(2).

The mere entry of default by the Clerk, however, "does not in itself warrant the [C]ourt in entering a default judgment." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *Stegeman v. Georgia*, 290 F. App'x 320, 323 (11th Cir. 2008) (per curiam). District courts may enter judgment by default against a defendant that fails "to plead or defend[.]" *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015) (per curiam) (citing Fed. R. Civ. P. 55(b)(2)). The Eleventh Circuit has a "strong policy of determining cases on their merits," so "default judgments are generally disfavored." *Id.* at 1244–45 (citation omitted). Entry of default is appropriate only when the pleadings contain "a sufficient basis" for the judgment such that they could "survive a motion to dismiss for failure to state a claim." *Id.* at 1245 (citation omitted). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if the complaint alleges enough facts to "allow[] the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court must "take the factual allegations in the

4

complaint as true and construe them in the light most favorable to the plaintiffs[,]" but the same liberal reading does not apply to legal conclusions. *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (citation omitted). "[A] plaintiff armed with nothing more than conclusions" cannot "unlock the doors of discovery[.]" *Iqbal*, 556 U.S. at 678–79. Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). When default is entered against a defendant, the Court considers the defendant to have admitted "the plaintiff's well-pleaded allegations of fact," but not the plaintiff's "conclusions of law." *Surtain*, 789 F.3d at 1245 (citation omitted).

Finally, "[i]n considering any default judgment, the Court must [also] consider (1) jurisdiction, (2) liability, and (3) damages." *Johnson v. Rammage*, No. 5:06-CV-057 (CAR), 2007 WL 2276847, at *1 (M.D. Ga. Aug. 7, 2007) (citing *Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004)). When granting a default judgment, the Court must hold an evidentiary hearing to determine damages unless all essential evidence is already on the record. *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).

## DISCUSSION

### I. Jurisdiction

The Complaint establishes that the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because one or more of Plaintiffs' claims arise under the laws of the United States, and under 28 U.S.C. § 1338 which gives district courts original jurisdiction over civil actions regarding the PVPA. (Doc. 1 ¶ 1). The Complaint also establishes that the Court has personal jurisdiction over Defendant Hill, as he resides in Georgia and was served with process in this District. (*Id.* ¶ 8; Doc. 6). Accordingly, this Court has subject-matter jurisdiction and personal jurisdiction over this case.

### II. Liability

As a result of Defendant Hill's failure to respond and the Clerk's entry of default, the following well-pleaded allegations in Plaintiffs' Complaint are accepted as true. *See Surtain*, 789 F.3d at 1245.

As stated above, this case involves allegations that Defendant Hill's unauthorized sale of Plaintiffs' proprietary oat variety violated Plaintiffs' rights under the PVPA, 7 U.S.C. § 2321 *et seq*. (Doc. 1 at 1). The PVPA provides that "[a]n owner shall have remedy by civil action for infringement of plant variety protection under section 2541 of this title. If a variety is sold under the name of the variety shown in a certificate, there is a prima facie presumption that it is the same variety." 7 U.S.C. § 2561. 7 U.S.C. § 2541(a)(1) provides that

> Except as otherwise provided in this subchapter, it shall be an infringement of the rights of the owner of a protected variety to perform without authority, any of the following acts in the United States, or in commerce which can be regulated by Congress or affecting such commerce, prior to expiration of the right to plant variety protection but after either the issue of the certificate or the distribution of a protected plant variety with the notice under section 2567 of this title:
>
> (1) sell or market the protected variety, or offer it or expose it for sale, deliver it, ship it, consign it, exchange it, or solicit an offer to buy it, or any other transfer of title or possession of it[.]

Notice is defined in § 2567 as "physically associating with or affixing to the container of seed of a variety or by fixing to the variety, a label containing either the words 'Unauthorized Propagation Prohibited' or the words 'Unauthorized Seed Multiplication Prohibited' and after the certificate issues, such additional words as 'U.S. Protected Variety[.]'" 7 U.S.C. § 2567. "The PVPA is regularly discussed in terms of patent law and the Federal Circuit applies patent law to fill in the gaps in PVPA jurisprudence." *Zuckerman Family Farms v. Bidart Bros.*, No. 1:14-cv-01529-AWI-BAM, 2014 WL 7239423, at *3 (E.D. Cal. Dec. 17, 2024) (citing *Syngenta Seeds, Inc. v. Delta Cotton Co-op, Inc.*, 457 F.3d 1269, 1276 (Fed. Cir. 2006)).

Plaintiffs' allegations that "Defendants marketed, offered for sale, stocked, shipped, conditioned, exposed for sale and/or sold a substantial quality of Horizon 720 for seed purposes" invoke § 2541(a)(1). (Doc. 1 ¶ 51). To properly plead a claim under § 2541(a)(1),

Plaintiffs must allege that "prior to expiration of the right to plant variety protection but after either the issue of the [PVPA] certificate or the distribution of a protected plant variety with notice[,]" Defendant Hill sold or marketed the protected variety or offered it for sale without authority from the certificate holder. *See* 7 U.S.C. §§ 2541(a), (a)(1). Plaintiffs allege that the Certificate was issued on or about December 28, 2017, and the infringing activity occurred on or about October 27, 2022—almost 5 years later. (Doc. 1 ¶¶ 18, 28–31). Plaintiffs further allege that Defendant Hill had "actual notice and knowledge that the Horizon 720 oat variety was federally protected by the PVPA" because at all times relevant to the claims in the Complaint, Plaintiffs Mixon, Plantation, and AGSouth "only sold Horizon 720 seed with written notice containing statutorily designated language signifying that the seed was protected under the PVPA[.]" (*Id.* ¶¶ 25, 49). Moreover, the Complaint alleges that Defendant Hill represented to the market tester that "he bought certified Horizon 720 oat seed from Plaintiff[] Mixon, . . . that the oat seed he was advertising and selling was from 'saved [seed] from last year,' and that 'they grow good if you want to plant them.'" (*Id.* ¶ 29). Plaintiffs allege that Defendant Hill "acknowledged his infringement" by stating "'most of these seeds got a trademark on them' because seed companies are 'trying to protect' their interests[.]" (*Id.* ¶ 30).

Plaintiffs have alleged facts sufficient to show that Defendant Hill violated their rights under the PVPA. First, the Complaint sufficiently identifies the protected oat seed variety as Horizon 720. Plaintiffs attach the Certificate and application for the Certificate to the Complaint. (Doc. 1-1). The application attached to the Certificate states that FL0720 was the temporary experimental name. (*Id.* at 2). Plaintiffs explain that the Certificate protects "the common at variety known as FL0720, which is sold under the commercial name Horizon 720." (Doc. 1 ¶ 18). Plaintiffs sufficiently allege that Defendant Hill violated their PVPA rights by selling the "protected Horizon 720 seed[.]" (*Id.* ¶ 52). The Complaint sufficiently demonstrates that Plaintiffs have a PVPA Certificate protecting the Horizon 720 oat variety and that Defendant Hill sold Horizon 720.

As Plaintiffs have stated a claim against Defendant Hill under the PVPA, the Court finds Defendant Hill is liable to Plaintiffs. On January 4, 2024, Plaintiffs filed the Proof of

Service as to Defendant Hill, which shows that Defendant Hill was properly served on December 9, 2023. (Doc. 6 at 2). Defendant Hill's answer was due by December 30, 2023. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). Defendant Hill has not pled or otherwise appeared in this case since being served. (*See* Docket). Accordingly, entry of default judgment against Defendant Hill is appropriate pursuant to Rule 55, given Defendant Hill's failure to appear after service of process.

### III. Damages

Having concluded that Defendant Hill is liable to Plaintiffs for violations of the PVPA and that Plaintiffs are entitled to entry of default judgment, the Court must now determine the appropriateness of Plaintiffs' requested recovery. Even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters[.]" *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). "While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." *Virgin Records Am., Inc. v. Lacey*, 510 F. Supp. 2d 588, 593 n.5 (S.D. Ala. 2007) (citations omitted). The Court must hold an evidentiary hearing to determine damages unless all essential evidence is already on the record. *See* Fed. R. Civ. P. 55(b)(2); *see Smyth*, 420 F.3d at 1232 n.13.

Here, Plaintiffs request the statutory damages provided for in 7 U.S.C. § 2564. (Doc. 11 at 12). According to the damages provision of the PVPA, "[u]pon finding an infringement the court shall award damages adequate to compensate for the infringement but in no event less than a reasonable royalty for the use made of the variety by the infringer, together with interest and costs as fixed by the court." 7 U.S.C. § 2564(a). The court may (1) "increase the damages up to three times the amount to be determined[,]" and (2) "receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances." *Id.* § 2564(b), (c). Plaintiffs rely on the formula opined by an expert in *Plantation Seed Conditioners, Inc. v. Kinchafoonee Hardware Inc.*, a case where a "Horizon" oat seed variety was at issue. No. 1:09-CV-00179 (WLS), 2012 WL 12950534 (M.D. Ga. Sept. 27, 2012); (Doc. 11 ¶ 33). In that case, the

8

court found the expert witnesses' testimony to be based on a reasonable methodology and process "as it relie[d] primarily on the *Georgia Pacific* factors." *Plantation Seed Conditioners, Inc.*, 2012 WL 12950534 at *4. That case, however, is from 2012 and involved a different Horizon oat variety.

The Court, therefore, will schedule an evidentiary hearing solely on the issue of Plaintiffs' damages. *Organizacion Miss Am. Latina, Inc. v. Urquidi*, 712 F. App'x 945, 948 (11th Cir. 2017) (per curiam) ("[D]espite Rule 55's permissive language, judgment of default awarding cash damages [can] not properly be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation.") (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 55(b)(2)(B) ("The court may conduct hearings [to] . . . determine the amount of damages.").

## CONCLUSION

Accordingly, Plaintiffs' Motion for Default Judgment (Doc. 11) is **GRANTED**. The Court **DIRECTS** the Clerk to enter judgment against Defendant Hill.

**SO ORDERED**, this 23rd day of July, 2025.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**